## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**CECIL RAY, JR.,**

      **Petitioner,**

                                   **Civil action no.  3:10cv57**

**v.**                                     **Criminal action no. 3:06cr8-1**
                                             **(Judge Bailey)**

**UNITED STATES OF AMERICA,**

      **Respondent.**

## OPINION/REPORT AND RECOMMENDATION

### I.  Introduction

On June 4, 2010,  Petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody with an affidavit and two attached memoranda in support. (Dkt.# 329). On June 7, 2010, the Government was ordered to respond. (Dkt.# 331).  The Government filed its response on July 26, 2010. (Dkt.# 340). Petitioner filed his Reply to the Government on September 7, 2010. (Dkt.# 347).

### II.  Facts

#### A.  Conviction and Sentence

On August 30, 2007, after a two-day trial, petitioner was convicted of Count One,  conspiracy to possess with intent to distribute in excess of fifty grams of cocaine base, also known as "crack," in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A) and Count Eight, distribution or aiding and abetting the distribution of a mixture or substance containing approximately 1.95 grams of cocaine base, also known as "crack," in violation of  21 U.S.C. §§ 841(a)(1).

On November 19, 2007, petitioner was sentenced to a term of life imprisonment on Count One, to run concurrently with a term of 40 years imprisonment on Count Eight, to be followed by five years supervised release on Count One to run concurrently with six years supervised  release on Count Eight.

1

(Dkt.# 265).

## B. **Direct Appeal**

On November 20, 2007, after his September 6, 2007 motion for a new trial was denied by Order entered on November 13, 2007 (Dkt.# 263), petitioner filed a Notice of Appeal. (Dkt.# 266). On appeal, petitioner contended that:

1) the District Court abused its discretion by not striking trial evidence which defendant claimed indicated his incarceration;

2) the District Court abused its discretion by not striking testimony regarding drug transactions occurring outside the charged conspiracy time frame;

3) the District Court abused its discretion by not striking the Government's attempt to impeach a witness with the witness' prior relationship with defense counsel;

4) the cumulative effect of the three previous errors was unduly prejudicial to defendant;

5) the jury's verdict was not supported by sufficient evidence; and

6) the District Court abused its discretion by imposing a sentence that was not within the properly calculated guideline range.

After petitioner's appellate brief was filed with the Fourth Circuit Court of Appeals, defendant filed a *pro se* motion with the Fourth Circuit seeking to have counsel removed and replaced with counsel of his own choosing, and to hold his appeal in abeyance until that change could be effected. (4th Cir. Dkt.# 25)(07-5155). By Order entered on May 9, 2008, petitioner's motion was granted (4th Cir. Dkt.# 29) and new retained appellate counsel entered his appearance on May 15, 2008. After a motion to strike the original brief was granted, a second or supplemental brief was filed, raising five issues:[1]

1) the Government committed prosecutorial misconduct throughout the trial;

---

[1] Petitioner's new appellate counsel re-raised four of the six issues already raised in his first appellate brief, and added one new issue, the prosecutorial misconduct claim.

2) the District Court abused its discretion by not striking testimony regarding drug transactions occurring outside the charged conspiracy time frame;

3) the jury's verdict was not supported by sufficient evidence;

4) the cumulative effect of the three previous errors was unduly prejudicial to defendant; and

5) the District Court abused its discretion by imposing a sentence that was not within the properly calculated guideline range.

On March 13, 2009, the judgment of the District Court was affirmed by the Fourth Circuit in an unpublished *per curiam* opinion. (Dkt.# 313). Mandate issued on April 6, 2009. (Dkt.# 315). Petitioner did not file a motion for rehearing or petition for a writ of *certiorari* with the United States Supreme Court.

## C. Federal Habeas Corpus

### Petitioners' Contentions (Dkt.# 329)

In his federal habeas petition, petitioner raises the following 12 issues, reordered here for clarity:

1) the District Court erred when it allowed evidence regarding the guilty pleas of co-defendants to be introduced to the jury;

2) the Government improperly rehabilitated its witnesses during direct exam;

3) during the trial, the Government violated his right to counsel by disparaging defense counsel; and

4) the Government violated his 5th Amendment right to remain silent by improperly commenting on his silence during closing argument.

5) The information contained in the affidavit of co-defendant David Richardson constitutes new evidence, thus entitling petitioner to a new trial.

6) Before trial, counsel[2] was ineffective for misadvising petitioner about his possible exposure

---

[2] Although petitioner does not identify which counsel his claims are directed at, petitioner was represented by two attorneys before trial. Attorney J. Mark Sutton was appointed to represent him from January 31, 2007 until August 21, 2007, approximately one week before trial. Attorney B. Craig Manford entered his appearance as retained counsel on March 30, 2007, thus any claims of ineffectiveness at trial or at sentencing presumably are

to a sentence of 360 months to life, should he decide to reject the plea deal and proceed to trial.

7) At trial, counsel was ineffective for

    a) failing to call co-defendant David Richardson as a witness;

    b) having a conflict of interest between petitioner and a former client, Leroy Newell, one of the Government's witnesses;

    c) failing to object when the Government improperly remarked on petitioner's silence during closing argument.

8) At sentencing, counsel was ineffective for

    a) failing to investigate and prepare;

    b) failing to object to the two-level enhancement for obstruction of justice and for having a leadership role in the conspiracy; and

    c) failing to object to the imposition of a 40-year term of imprisonment for Count Eight, when the statutory maximum for that charge was only 20 years.

As relief, petitioner requests that his conviction and sentence be vacated.

**Government's Response (Dkt.# 340)**

1) None of the issues petitioner raises have any merit, either individually or collectively.

2) Petitioner has shown no error on the part of the District Court, misconduct on the part of the United States, nor any ineffectiveness by any of his attorneys.

3) Even assuming *arguendo* that there was any error, petitioner has not made a sufficient showing of any prejudice.

4) Petitioner's Ground 5 claim that co-defendant Richardson's affidavit constitutes new evidence which would mandate a new trial is without merit. Further, the affidavit does not meet the Fourth Circuit Court of Appeals' five-part test to determine whether a Fed. R. Crim. Pro. 33 motion for a new trial should be granted, set forth in U.S. v. Rhynes.[3]

5) The claims petitioner raises in Grounds One, Two and Four are all procedurally defaulted, because they should have been raised on direct appeal.

---

directed at Mr. Manford.

    [3] U.S. v. Rhynes, 206 F.3d 349 (4th Cir. 1999).

6) Petitioner's claims are insufficiently pled and have no support in fact or law.

7) Petitioner has failed to demonstrate the necessity for an evidentiary hearing and his petition should be denied and dismissed.

**Petitioner's Reply (Dkt.# 347)**

In his reply, Petitioner reiterates his claims previously made in his § 2255 motion, and attempts to refute the Government's position on the same.

Petitioner again requests that his § 2255 motion be granted, or alternatively, "at the minimum," that an evidentiary hearing be granted.

**Petitioner's Motion for Leave to File a Supplemental Pleading Pursuant to Fed. R. Civ. Pro. 15(d)**

Petitioner contends that a recent decision by the United States Supreme Court, Lafler v. Cooper, 132 S. Ct. 1376 (2012) applies to his Ground 6 claim that counsel was ineffective for misadvising him as to his sentencing exposure when he considered and refused two plea offers.

**D.     Other Collateral Proceedings**

On November 14, 2011, petitioner filed a *pro se* Motion for Reduction of Sentence Pursuant to 18 U.S.C. 3582.  (Dkt.# 369).  On November 30, 2011, the District Court denied petitioner's motion to reduce his sentence. (Dkt.# 382).  Petitioner timely appealed and the Fourth Circuit Court of Appeals affirmed the District Court's decision by *per curiam* unpublished opinion on April 3, 2012.  (Dkt.# 417).  On June 18, 2012, petitioner's petition for rehearing and rehearing *en banc* was denied.  (Dkt.# 436).

## III.  Analysis

**A.     Petitioner's Burden of Proof**

A petitioner collaterally attacking his sentence or conviction bears the burden of proving his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that

the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D. Va. Jan. 4, 2006.

**B.     Procedurally Barred Claims**

Before evaluating the merits of petitioner's claims, the Court must determine which of petitioner's issues he may bring in his § 2255 motion and which are procedurally barred.

It is well settled that non-constitutional issues that could have been raised on direct appeal but were not may <u>not</u> be raised in a collateral attack such as a § 2255 motion. (emphasis added) Sunal v. Large, 332 U.S. 174, 178-79 (1947). "[A] final judgment commands respect. For this reason, we have long and consistently affirmed that a collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982). Therefore, the failure to raise a claim on direct appeal may result in a procedural default barring collateral review. Bousley v. United States, 523 U.S. 614 (1998). Constitutional errors that were capable of being raised on direct appeal but were not <u>may</u> be raised in a § 2255 motion so long as the petitioner demonstrates 1) "cause" that excuses his procedural default, and 2) "actual prejudice" resulting from the alleged error. (emphasis added) United States v. Maybeck, 23 F.3d 888, 891 (4th Cir. 1994).

"In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." United States v. Mikalajunas, 186 F.3d 490, 492-493 (4th Cir. 1999). "The existence of cause for a procedural default must turn on something

external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." Id.

In establishing "prejudice," the petitioner must show the error worked to his "actual and substantial disadvantage," rather than merely created a possibility of prejudice. See Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)).  In the alternative to establishing "cause" and "prejudice," the petitioner may demonstrate "actual innocence," or that "it is more likely than not, in light of all the evidence, that no reasonable juror would have convicted him." Bousley v. United States, 523 U.S. 614, 621 (1998).  "In order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence." Mikalajunas,186 F.3d at 493. "Typically, to establish actual innocence, a petitioner must demonstrate actual factual innocence of the offense of conviction, i.e., that petitioner did not commit the crime of which he was convicted;  this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." Id. at 494. The petitioner must show that "it is more likely than not that no reasonable juror would have convicted him." Schlup v. Delo, 513 U.S. 298 (1995).  Should a petitioner prove actual innocence,  the court should issue a writ of habeas corpus to prevent a "miscarriage of justice," regardless of whether the issue was Aed.  Hurdle v. United States, 2007 U.S. Dist. LEXIS 37709, at *6-7 (E.D. Va. May 22, 2007) (relying on Schlup v. Delo, 513 U.S. 298 (1995).  Finally, issues previously rejected on direct appeal may not be raised in a collateral attack. Boeckenhaupt v. United States, 537 F.2d 1182 (4th Cir. 1976).

Accordingly, the undersigned concludes that petitioner's Ground One claim that District Court erred when it allowed evidence regarding the guilty pleas of co-defendants to be introduced to the jury; his Ground Two claim that the Government improperly rehabilitated its witnesses during direct exam;

his Ground Three claim[4] that at trial, the Government violated his right to counsel by disparaging

defense counsel; and his Ground Four claim that the Government violated his 5th Amendment right to

remain silent by improperly commenting on his silence during closing argument are all procedurally

defaulted, because they could have been, but were not raised on appeal, unless the petitioner can show

cause and prejudice for the default. Id.

Nowhere in his petition, either of its attached memoranda or his reply, has petitioner alleged any

cause, external to himself, to excuse his failure to raise Grounds One - Four on appeal, and thus he has

waived the right to bring them here. In the absence of cause, he cannot prove prejudice. Furthermore,

he does not even attempt to claim actual innocence. Moreover, the overwhelming evidence presented

against him at trial marshals against the conclusion that no reasonable jury would convict him, Bousley

v. United States, *supra* at 621. Accordingly, the undersigned concludes these enumerated claims are

procedurally defaulted.

**Ground Five: Whether the information contained in the affidavit of co-defendant David
Richardson constitutes new evidence, thus entitling petitioner to a new trial**.

Petitioner attaches an affidavit from co-defendant David Richardson, purportedly dated February

15, 2010, but not attested to or notarized until March 1, 2010.[5] In it, Richardson offers information

exculpatory to petitioner, regarding Richardson's various drug dealings generally, and the specific

---

[4] The Government's response does not address this claim. Petitioner raises it as a tersely-worded,
insufficiently-pled claim in the first of the two memoranda attached to his original petition. (Dkt.# 329-1 at 2). He
does not elaborate on it, provide any details or make any further mention of it in the second attached memorandum
or in his reply.

[5] The Federal Bureau of Prisons' "Inmate Locator" indicates that Richardson was released from custody on
February 22, 2010. See
<http://www.bop.gov/iloc2/InmateFinderServlet?Transaction=NameSearch&needingMoreList=false&FirstName=da
vid&Middle=anthony&LastName=richardson&Race=U&Sex=U&Age=&x=58&y=19>
Of note, the signature on the affidavit purported to be Richardson's bears little resemblance to Richardson's
signatures on each of the five pages of his plea agreement. (3:06cr8-3 at 109).

events of April 13, 2005.[6]  Richardson contends that: he attempted to provide this same information to petitioner's counsel pre-trial; offered to testify on behalf of petitioner; and offered to take a polygraph to attest to the fact that "there was never a conspiracy to distribute cocaine between myself and Mr. Ray and/or any other person." (Dkt.# 329-2 at 2 - 3).  He avers that he was told he would be called if needed but that he was never called.

Petitioner asserts that this "newly discovered" evidence warrants his receiving a new trial.

Rule 33 of the Federal Rules of Criminal Procedure governs new trials.  It provides, in pertinent part:

> **(a) Defendant's Motion**.  Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. If the case was tried without a jury, the court may take additional testimony and enter a new judgment.
>
> **(b) Time to File**.
>
> **(1) Newly Discovered Evidence**.  Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty. If an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case.

Fed. R. Crim. Pro. 33.

The Fourth Circuit Court of Appeals has held that under applicable legal principles, a trial court "should exercise its discretion to award a new trial sparingly," and a jury verdict is not to be overturned except in the rare circumstance when the evidence "weighs heavily" against it." U.S. v. Smith, 451 F.3d 209, 216 - 17 (4th Cir. 2006).  The Fourth Circuit applies a five-part test, set forth in U.S. v. Rhynes, 206 F.3d 349, 360 (4th Cir. 1999), to determine whether a Fed. R. Crim. P. 33 motion for a new trial should be granted: 1) is the evidence in fact newly discovered; 2) are the facts alleged from which the court may infer due diligence on the movant's part; 3) is the evidence relied upon not merely

---

[6] April 13, 2005 was the date of the controlled buy between the confidential informant ("C.I.") Derfler and Richardson.

cumulative or impeaching; 4) is the evidence material to the issues involved; and 5) would the evidence probably result in acquittal at a new trial?

Unless all five factors are proven, the Fourth Circuit has never granted a new trial.  U.S. v. Fulcher, 250 F.3d 244, 249 (4th Cir. 2001).

Here, petitioner has timely moved for a new trial on the basis of newly discovered evidence within three years after the date of the August 30, 2007 verdict and has no appeal pending.  However, the evidence offered by petitioner clearly is not newly-discovered.  The affidavit is attested to and notarized on March 1, 2010; by his own admission in it, Richardson clearly states that he provided all of the information contained in it to petitioner's counsel "sometime [sic] before . . . Rays [sic]  trial," via a letter and a phone call made by a girlfriend on his behalf.[7]  (Dkt.# 329-2 at 2).

A review of the record reveals that petitioner's original trial date was April 10, 2007. (Dkt.# 184).  Richardson was listed as a witness for both petitioner and the Government (Dkt.# 197 at 4 and Dkt.# 209 at 1), and pursuant to Writs of Habeas Corpus ad Testificandum by petitioner's first trial counsel, was brought to the Eastern Regional Jail ("ERJ") to await testifying at petitioner's trial.  (Dkt.# 201 and 207). Richardson was housed at the ERJ from April 2, 2007 - April 9, 2007.  (Dkt.# 215 at 3). Petitioner, who had already been at the ERJ since January 29, 2007, was still there. (Dkt.# 365-1 at 1). Ultimately, petitioner's trial was continued twice.  Richardson was brought back to the ERJ and remained there during petitioner's August 29 - 30, 2007 trial, from August 13 - September 10, 2007. (Dkt.# 365-3 at 1) while petitioner was still there.[8]  (Dkt.# 365-1 at 1).  The record is undisputed that petitioner and co-defendant Richardson knew each other well.  To accept that this potentially pivotal evidence is newly-discovered requires two vast leaps of logic: 1) that, prior to trial, defense counsel

---

[7] Richardson does not specify what date he allegedly provided the information to petitioner's counsel.

[8] The record reveals that petitioner was not transferred from the ERJ until November 28, 2007.

would have been privy to evidence that could exonerate his client and would not have shared it with him or used it at trial, and 2) that Richardson, who, according to overwhelming trial testimony, was petitioner's long time friend and business associate, and who was incarcerated with him twice before trial, from April 2 - 9, 2007, and from August 13, 2007, sixteen days before trial, until September 10, 2007, ten days after trial, would never have advised petitioner, until two and a half years later, that he was willing to testify on his behalf at trial. Moreover, Richardson was listed as a potential witness by both the prosecution and the defense, after the prosecution failed to call him, defense counsel apparently made the strategic decision not to, as well. It is unlikely that petitioner was unaware of the substance of Richardson's potential testimony at the time. Petitioner's contention that this evidence is newly-discovered is simply not credible.

Nor can petitioner prove due diligence. He has offered nothing to explain how or when he learned of this purportedly newly-discovered testimony, why he could not have learned about it earlier, or how he could possibly have been unaware that Richardson could exculpate him until so long after trial and appeal, let alone why Richardson, although named as a witness, was not called to testify.

Having found that the petitioner cannot prove the first two factors, the undersigned does not need to address the next three, because unless all five are proven, no new trial will be granted. Fulcher, supra at 249.

**Ground Six: Whether counsel was ineffective before trial for misadvising petitioner about his possible exposure to a sentence of 360 months to life, should he decide to reject the plea deal and proceed to trial.**

In this tersely-worded claim, petitioner contends that both trial counsel[9] failed to explain to him

---

[9] Petitioner's original motion does not identify which counsel he makes this allegation against. However, in response to the Government's noting his failure to do so, petitioner's reply clarifies that his claim is that both Attorney Sutton and Attorney Manford failed to advise him. (Dkt.# 347 at 6 - 7). However, in his reply, despite petitioner's averment that an "attached supplemental affidavit" would shed light on the issue, no supplemental affidavit was attached.

that he was facing a sentence of 360 months to life under the sentencing guidelines, if he rejected the Government's plea offer of a "10 year mandatory minimum" and proceeded to trial.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that the petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." Strickland at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. Id. at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in Strickland, defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart v. Fretwell, 506 U.S. 364 (1993).

A Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. Strickland 466 U.S. at 689-90. Moreover, there are no absolute rules in determining what is reasonable performance. See Hunt v. Nuth, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is viewed on the facts of a particular case and at the time of counsel's conduct).

Petitioner asserts that counsel told him he "would likely receive 10 years if he lost trial [sic]." (Dkt.# 329-3 at 1). In his reply, in response to the Government's pointing out, via attached copies of both rejected plea offers, that at no time was he ever offered a "10 year mandatory minimum" sentence,[10] he avers that the Government misconstrued his claim. "While a 10 year sentence was a real possibility, the gist of . . . [his] claim is that neither Sutton nor Manford told him that he was facing a minimum of

---

[10] Both the February 6, 2007 and the March 21, 2007 plea offers specify that the maximum penalty for pleading to Count Eight would be not less than one nor more than forty years incarceration. (Dkt.# 340-2 at 1 and Dkt.# 340-3 at 1). The latter plea agreement reduced the amount of drug relevant conduct from 242.59 grams of crack cocaine to greater than 50 but less than 150 grams of crack cocaine. (Dkt.# 340-2 at 3 and Dkt.# 340-3 at 3).

360 months to life sentence[.]" (Dkt.# 347 at 6 - 7). He avers that "there is no evidence that either Sutton or Manford counseled Petitioner as to the risk of proceeding to trial . . . the risk of conviction . . . or the advantages of pleading guilty[.]" (Id. at 7).

The Court finds petitioner's argument unpersuasive. Several Circuits of the United States Court of Appeals have found that a "miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel." Hughes v. United States, 2007 WL 841940 at *4 (W.D.N.C. 2007), citing United States v. Gordon, 4 F.3d 1567, 1570 (10th Cir. 1993); Bethel v. United States, 458 F.3d 711, 717 (7th Cir. 2006), cert. denied, 127 S.Ct. 1027 (2007); United States v. Foster, 68 F.3d 86, 87-88 (4th Cir. 1995). Furthermore, it has been noted that:

> [T]he sentencing consequences of guilty pleas (or, for that matter guilty verdicts) are extraordinarily difficult to predict. Although the sentencing guidelines significantly restrict the sentencing discretion of the district courts, that discretion is still extensive, and predicting the exercise of that discretion is an uncertain art. Therefore, . . . a mistaken prediction is not enough in itself to show deficient performance, even when that mistake is great[.]

Hughes, 2007 WL 841940 at *5, *quoting* United States v. Barnes, 83 F.3d 934, 940 (7th Cir. 1996).

All petitioner has alleged is that his counsel gave an inaccurate prediction regarding potential sentence length. Petitioner has not alleged or established any other evidence required to make a cognizable claim for ineffective assistance of counsel. To the contrary, a review of the record reveals that at a July 3, 2007 pretrial conference, at nearly two months before the August 29, 2007 trial, petitioner was present with counsel, and not only was the wealth of evidence the Government had against petitioner summarized, but the penalties he was facing for the two counts were openly discussed in his presence:

> MR. MUCKLOW: Yes, Your Honor. The defendant is named in two of the counts of the indictment.

THE COURT: Yeah, of the conspiracy count and then one substantive count, Count 8?

MR. MUCKLOW: Yes, Your Honor.

THE COURT: And what are the penalties for those?

MR. MUCKLOW: Your Honor, **the conspiracy is a ten to life incarceration. Count 8, I believe, is one to 40 because it is a school count. The penalties – there is a minimum mandatory one year, and the 20 -year maximum is doubled under 860. So, the penalties would be one year to 40 years.**
. . .

THE COURT: What's the status of any [plea] negotiations?

MR. MUCKOW: Your Honor, we have submitted, I think, two plea agreements to former counsel. I'm not sure whether Mr. Manford has a copy of those, but he should have gotten them from prior counsel in this case. And Mr. Manford and I have had some discussions, more of a general nature, with regard to the  - - a possible plea agreement. But there hasn't been any serious negotiations, I don't believe, up to this point.
MR. MANFORD: That's correct, Your Honor.

(Rough Draft Transcript of July 7, 2007 PreTrial Conference at 6 -7)(emphasis added).

Clearly, petitioner was apprised of the sentencing risks he was facing by refusing the plea agreements, well in advance of going to trial.

Furthermore, the disparity between counsel's pre-trial sentencing estimates and the actual sentence imposed is a direct result of relevant conduct factors elicited at trial. Counsel's sentencing estimations and the proposed plea agreements' suggested sentencing guideline ranges of 1-40 years were a direct result of the plea agreements' relevant conduct stipulations that limited petitioner's relevant conduct to 242.59 grams of crack (in the first plea agreement), and to "more than 50 but less than 150 grams" of crack (in the second). However, at trial, prosecution witness testimony attributed between 4,827.18 - 6,546.04 grams of crack cocaine to petitioner, uncontroverted evidence[11] of conduct which benefitted petitioner financially, warranting a 4-level increase pursuant to U.S.S.G.

---

[11]At trial, petitioner did not testify and called no witnesses to testify on his behalf. (Dkt.# 272-3 at 203).

§3B.1.(a). Moreover, pursuant to U.S.S.G. §3C.1.(a), petitioner was assessed a two-level increase for suborning and attempting to suborn perjury at trial, for attempting to persuade and intimidating witnesses to lie or write letters retracting statements previously given. Further, by continuing to deny wrongdoing and putting the Government to its burden of proof at trial, he lost the opportunity for an adjustment for the acceptance of responsibility, pursuant to U.S.S.G. §3E.1.1, Application Note 2. Thus, petitioner alone subjected himself to the possibility of enhanced sentencing. Counsel could not have reasonably foreseen and calculated all of the relevant conduct enhancements that were founded on extensive and damaging trial testimony and petitioner's attempts to suborn perjury.

Relief should be denied because petitioner has not met his burden.

**Ground Seven (a): Whether counsel was in ineffective at trial for failing to call co-defendant David Richardson as a witness.**

Petitioner contends that counsel was ineffective for failing to call his co-defendant Richardson to testify at trial, because Richardson could have provided important exculpatory evidence that would have changed the outcome of the trial. Richardson's planned testimony would have included a contention that the $550.00 that was recovered from petitioner upon arrest was paid to him by Richardson, not for a drug buy, but to reimburse petitioner for the purchase of some clothing petitioner sold to Richardson, denying that he ever worked for petitioner distributing drugs, and claiming that a Government witness lied at trial. Richardson provided an affidavit, referred to *supra,* in which he contends he advised petitioner's trial counsel by phone and by letter, of his willingness to provide this testimony at trial. Neither petitioner nor his co-defendant Richardson have produced a copy of the letter Richardson alleges having sent to petitioner's trial attorney Manford.

The Court agrees with the Government and finds petitioner's argument has no merit. As the Government accurately asserts, counsel was not ineffective in failing to call Richardson as a witness. Richardson was equally available as a witness for both parties. It is apparent from the trial record that

after the Government elected not to call him, counsel attempted to make a "missing witness" argument, rather than call Richardson himself. When the Government prevailed on its motion in limine to prevent defense counsel from doing so, defense counsel opted not to call Richardson. (Dkt.# 272-2 at 194 - 197 and #272-3 at 203 - 205). It is apparent that the reason counsel did so was strategic; there was a wealth of other witness testimony, as well as audio and video recording capturing Richardson in the act of selling drugs for petitioner, to disprove Richardson's allegedly exculpatory evidence. Defense counsel's strategic decision "must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691. Petitioner cannot meet his burden under Strickland and this claim should be dismissed.

**Ground Seven (b): Whether counsel was in ineffective at trial for having a conflict of interest between petitioner and Leroy Newell, a Government witness, who was one of defense counsel's former clients.**

Petitioner contends his case was prejudiced by the insinuation, before the jury, that a prosecution witness, Leroy Newell, provided testimony exculpatory to petitioner because he was a prior client of petitioner's defense counsel. Petitioner contends that he did not "knowingly, voluntarily and intelligently" waive his right to conflict-free counsel.

"The Sixth Amendment guarantees an accused the right to effective assistance of counsel, and an essential aspect of this right is a lawyer 'unhindered by conflicts of interest.'" See United States v. Nicholson, 475 F.3d 241, 248 (4th Cir. 2007) (citing Strickland v. Washington, supra and quoting Mickens v. Taylor, 240 F.3d 348, 355 (4th Cir. 2001) (en banc), aff'd, 535 U.S. 162 (2002)). When a petitioner asserts an ineffective assistance of counsel claim based on a conflict of interest, the standard for such a claim is set forth in Cuyler v. Sullivan, 446 U.S. 335 (1980). Nicholson at 249. "To establish a conflict of interest resulted in ineffective assistance, '[m]ore than a mere possibility of conflict must be shown.'" Id. (quoting United States v. Tatum, 943 F.2d 370, 375 (4th

16

Cir. 1991)). Instead, the petitioner must show "(1) that his lawyer was under an actual conflict of interest, and (2) that this conflict adversely affected his lawyer's performance." Id. (citing Cuyler v. Sullivan, 446 U.S. at 348) (internal citations omitted).

To show an actual conflict of interest, the petitioner "must show that [his] interests diverged with respect to a material factual or legal issue or to a course of action." Gilbert v. Moore, 134 F.3d 642, 652 (4th Cir. 1998) (en banc) (internal quotations omitted). Alternately, a conflict of interest exists when counsel is regarded to "account to two masters" or when he fails to take action on behalf of one client because it would adversely affect another. United States v. Tatum, 943 F.2d at 376.

A review of the record reveals that on the eve of trial, petitioner specifically waived any objection to Leroy Newell testifying for the Government (Dkt.# 271 at 3 - 8), after it was discovered that counsel had previously defended Newell twelve years earlier on a criminal charge. At a hearing held in chambers before trial, the Court conducted a thorough and complete hearing on the issue. Defense counsel advised the Court he had no independent recollection of the representation and therefore, no information that would be pertinent to cross exam. Petitioner knowingly waived any objection to the possible conflict of interest. The Court ruled that under the circumstances, there was no actual conflict of interest, only a potential conflict of interest. (Dkt.# 271 at 8).

On the witness stand, Newell radically changed his testimony from that given before the Grand Jury and confirmed by him to the prosecution on the evening before trial. Instead of testimony inculpating petitioner, Newell gave testimony exculpating petitioner. Surprised, the Assistant U.S. Attorney ("AUSA") questionedNewell's prior relationship with defense counsel. Defense counsel objected.

Petitioner's claim must fail. A review of the record reveals that not only did petitioner specifically waive any objection to the potential conflict with Newell and defense counsel prior to trial,

he appeared to be very comfortable with the prospect of Newell's testifying. When the Court explained all of the various potential scenarios where a conflict could arise, petitioner specifically and repeatedly expressed his full understanding of the issues and reiterated his desire to go forward with trial with defense counsel's representation. (Id. at 4, 5, and 6).

Moreover, the question by the Assistant United States Attorney that petitioner now objects to was a question in response to Newell's sudden adverse testimony. It could not have been anticipated by defense counsel. Notwithstanding the sudden turn of events, defense counsel objected to the question. Moreover, the change of testimony by Newell was found to be a direct result of petitioner's suborning perjury. The PreSentence Investigation Report ("PSR") indicates that petitioner was assessed a two-level increase for suborning and attempting to suborn perjury with multiple trial witnesses. The probation officer noted that

> Leroy Newell wrote a letter to Assistant United States Attorney Paul Camilletti in which he retracted his previously made statements concerning Ray's drug dealing activities. He gave his letter to the defendant, who in turn gave it to defense counsel.

Dkt.# 264, ¶31 at 10.

Finally, petitioner has already raised this issue on appeal, albeit framed there as prosecutorial misconduct for asking the question; the Fourth Circuit Court of Appeals held that there was no prejudice to petitioner in the question posed, because defense counsel objected and there was no further inquiry; thus this issue is also procedurally barred.

**Ground Seven (c): Whether counsel was ineffective for failing to object when the Government improperly remarked on petitioner's post-arrest silence during closing argument.**

Petitioner contends that counsel failed to object during closing argument when the Government violated his 5th Amendment Miranda right to silence by alluding to his post-arrest failure to request the return of, or file a claim for the return of, the nearly $10,000.00 of drug money confiscated from him during a pat-down search of his person and car by the police upon arrest.

The undersigned finds that this claim is merely another attempt by petitioner to raise his Ground Four Miranda claim, a claim that petitioner should have raised on direct appeal. That claim has already been recommended for dismissal as procedurally defaulted; thus this claim, albeit here couched as ineffective assistance of counsel, should be, as well.

**Ground Eight (a): Whether counsel was in ineffective at sentencing for failing to investigate and prepare.**

Petitioner contends that counsel was ineffective at sentencing for admitting he "did not investigate or prepare due to heavy case load/murder trial." (Dkt.# 329-1 at 3).

Claims of ineffective assistance of counsel for failure to investigate are analyzed in light of all circumstances, and while "[counsel] could well have made a more thorough investigation than he did. [] [n]evertheless, in considering claims of ineffective assistance of counsel, '[w]e address not what is prudent or appropriate, but only what is constitutionally compelled.'" Burger v. Kemp, 483 776, 794 (1987) (quoting U.S. v. Cronic, 446 U.S. 648, 665 n. 38 (1984)).

Here, petitioner argues that at sentencing, counsel admitted he had been too busy with a murder trial to file written objections to the PSR or conduct an appropriate investigation to prepare for the sentencing hearing. Specifically, petitioner claims that counsel failed to: challenge the PSR's wrongful "double-counting" of criminal history points and inclusion of a "local ordinance violation," which improperly garnered him a two-point enhancement in his criminal history; failed to object to relevant conduct attributed to petitioner; and/or failed to present any mitigating argument toward petitioner's relevant conduct.

A review of the sentencing hearing transcript reveals that while counsel did admit that he had been tied up with a murder trial and had not had time to prepare *written* objections, he had reviewed the PSR for areas for challenge, and was fully prepared to make oral objections. The Court was agreeable and counsel proceeded. (Dkt.# 273 at 4 - 6). Petitioner's contention that counsel failed to challenge the

relevant conduct attributed to him that determined his base offense level fails; the Court had already determined it would use the Government's low end drug relevant conduct, rather than the probation officer's low end calculations, giving petitioner a base offense level of 36 rather than the 38 he would have otherwise received. (Dkt.# 264 at 9 and 273 at 7). Counsel informed the Court that its decision to do so obviated the need for several of his objections as to relevant conduct. (Dkt.# 273 at 9).

Petitioner's suggestion that had only counsel "acted properly," he would not have had "a lot" of the relevant conduct attributed to him is vague and insufficiently-pled. Habeas petitions must meet heightened pleading requirements. McFarland v. Scott, 512 U.S. 849, 856 (1994). "In order to obtain an evidentiary hearing on an ineffective assistance claim -- or, for that matter, on any claim -- a habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing." Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), *cert. denied,* 507 U.S. 923 (1993), *abrogation on other grounds recognized,* Yeatts v. Angelone, 166 F.2d 255 (4th Cir. 1999). Petitioner has not offered any specifics as to which amounts were wrongfully attributed to him and why, nor has he shown that the outcome would have been any different, had counsel done so.

Petitioner's next claim, that counsel failed to challenge the PSR's wrongful "double-counting" of criminal history points and inclusion of a "local ordinance violation," which improperly garnered him a two-point enhancement in his criminal history, must fail as well. Petitioner's suggestion that the offenses described in ¶ 45 and 50 of his PSR were the same and constitute "double-counting" is incorrect. The two offenses involve different dates, facts, and criminal case numbers, thus they represent two separate crimes and their criminal history point calculations were proper. (Dkt.# 264 at 12 and 13).

Petitioner's next claim, that he was wrongly assessed criminal history points for convictions that were "downgraded local ordinance violations" also lacks merit. Petitioner offers nothing to support

this claim except his bare allegation, and there is no local ordinance violation referenced in the PSR for either conviction. Moreover, the offense in ¶ 54 was a conviction in the Court of Common Pleas for Montgomery County, Pennsylvania, upon a guilty plea for marijuana possession, in October 2002, with a one-year sentence of probation. The Court of Common Pleas is Pennsylvania's trial court, where major civil and criminal cases, not violations of local ordinances, are heard. See http://www.pacourts.us. The offense in ¶ 56 was a conviction in Magistrate Court of Berkeley County, West Virginia, after a guilty plea to possession of an imitation controlled substance in December 2002, for which he was assessed a fine and costs. (Dkt.# 264 at 13). Further, the Berkeley County Magistrate would not have had jurisdiction over pleas to local ordinances; those claims are under the jurisdiction of municipal courts. See Id. Again, "a habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing." Nickerson v. Lee, *supra* at 1136.

**Ground Eight (b): Whether counsel was in ineffective at sentencing for failing to object to the two-level enhancement for obstruction of justice and for having a leadership role in the conspiracy.**

Petitioner argues that counsel's performance at sentence was deficient, because he failed to object to the two-level enhancements petitioner received for obstruction of justice via witness intimidation and for having a leadership role in the conspiracy.

Petitioner contends that the witnesses who changed their stories did so "in the attempt to do the right thing and be truthful," not because he threatened or intimated them. (Dkt.# 329-3 at 3). In his reply, he asserts that there was no evidence of threats or intimidation on his part, to influence any witness to change their story. However, the weight of the testimony at trial was that petitioner suborned perjury and

intimidated witnesses.[12]  Petitioner's claim that counsel was ineffective for not objecting on this basis

has no support in fact or law.  On appeal, the Fourth Circuit noted:

> As evidenced by the finding of guilt, the jury resolved any conflicts in testimony in favor of the Government, determined the Government's witnesses to be sufficiently credible to support the verdict of guilty, and otherwise fund sufficient circumstantial and direct evidence of guilt.  We likewise conclude the evidence was sufficient.

United States v. Ray, 2009 WL 667418 at 6-7 (4th Cir. 2009).

Clearly, any objection by counsel on this ground at this point in the proceedings would have

been frivolous; counsel cannot be found deficient for failing to object when there was no basis to do

so and where objection would be futile.  Thus petitioner can prove neither deficient performance nor

prejudice, and has failed in his burden under Strickland.

As for petitioner's claim that while there was sufficient evidence to prove he sold drugs to

individuals involved in the conspiracy, there was "absolutely no evidence" to show he directed the

operation or activities of those individuals  (Dkt.# 347 at 11), clearly the jury did not agree, because they

found otherwise, as did the Fourth Circuit, as noted *supra*.  Further, petitioner has already raised a

sufficiency of evidence claim on appeal; he is procedurally barred from raising it again here, albeit now

couched as an ineffective assistance of counsel claim.

**Ground Eight (c): Whether counsel was ineffective at sentencing for failing to object to the imposition of a 40-year term of imprisonment for Count Eight, when the statutory maximum for**

---

[12] In the PSR, the probation officer noted: The defendant will also be assessed a two level increase pursuant to U.S.S.G. §3C1.1, for Obstruction of Justice.  The defendant suborned and attempted to suborn perjury during his trial.  Darryl Clinkscale testified that the defendant told him to change his statement because what he had said was a lie.  David Taylor, at the defendant's direction, wrote a letter that stated he did not have any drug dealings with Ray.  He stated that he signed the letter because he felt intimidated by Ray.  Stephanie Payton's trial testimony concerning the drug purchases she made from the defendant was also [sic] different from what she had previously told investigators.  Leroy Newell wrote a letter to Assistant United States Attorney Paul Camilletti in which he retracted his previously made statements concerning Ray's drug dealing activities.  He gave his letter to the defendant, who in turn gave it to defense counsel.  Dkt.# 264, ¶31 at 10.  Moreover, petitioner's argument omits mention that counsel did in fact raise the issue of the prosecution witnesses' credibility, along with sufficiency of the evidence, among other issues, in a September 6, 2007 motion for a new trial or judgement of acquittal notwithstanding the jury's verdict.  (Dkt.# 253).

**that charge was only 20 years.**

Petitioner contends that the maximum penalty for conviction on Count Eight was twenty years, and counsel's failure to object at the sentencing hearing when the Court imposed a forty-year term upon him "constitutes a textbook case of ineffective assistance of counsel."

In Count Eight, petitioner was charged with and convicted of the distribution of 1.95 grams of crack cocaine within 1000 feet of North Middle School in Martinsburg, West Virginia, in violation of 21 U.S.C. §§ 841(a)(1) and 860.

Title 21, United States Code, § 841 of the Controlled Substances Act provides:

(a) Unlawful acts

Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally--

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or

(2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.

(b) Penalties

Except as otherwise provided in section 859, 860, or 861 of this title, any person who violates subsection (a) of this section shall be sentenced as follows:
. . .

(1)(C) In the case of a controlled substance in schedule I or II . . . . such person shall be sentenced to a term of imprisonment of not more than 20 years.

21 U.S.C. §§ 841(a)(1)and 841(b)(1)(C).

Further, Title 21, U.S.C. § 860, Distribution or Manufacturing in or Near Schools and Colleges, provides:

(a) Penalty

Any person who violates section 841(a)(1) of this title or section 856 of this title by distributing, possessing with intent to distribute, or manufacturing a controlled substance

in or on, or **within one thousand feet of, the real property comprising a public or private elementary, vocational, or secondary school or a public or private college, junior college, or university**, or a playground, or housing facility owned by a public housing authority, or within 100 feet of a public or private youth center, public swimming pool, or video arcade facility, is (except as provided in subsection (b) of this section) subject to (1) **twice the maximum punishment authorized by section 841(b) of this title[.]**

21 U.S.C. § 860(a)(emphasis added).

Thus, petitioner's claim has no merit; although the maximum penalty under § 841(a)(1) is twenty years, that penalty was doubled by virtue of the jury's special interrogatory finding that the distribution of crack cocaine occurred within 1,000 feet of the school. (Dkt.# 248 at 4).

Petitioner's claim that counsel was ineffective for not objecting on this basis has no support in fact or law. Any objection by counsel on this ground would have been frivolous. Counsel cannot be found deficient for failing to object when there was no basis to do so and where objection would be futile. Moreover, even if petitioner could prove deficient performance, since his life sentence on Count One runs concurrently with the sentence received for Count Eight, even if he had received the twenty year sentence, it would have made no difference in his sentence because he would still be in prison for life. Thus he cannot prove prejudice and has failed in his burden under <u>Strickland</u>.

## IV.  <u>Recommendation</u>

For the reasons stated above, the undersigned recommends that the petitioner's §2255 motion be **DENIED and DISMISSED with prejudice** from the docket.

Further, petitioner's motion for an evidentiary hearing (Dkt.# 348) and petitioner's Motion for Leave to File a Supplemental Pleading Pursuant to Fed.R.Civ.Pro. 15(d) (Dkt.# 424) should be **DENIED** as moot.

Within **fourteen (14) days** after being served with a copy of this opinon/report and recommendation,, any party may file with the Clerk of Court written objections identifying those portions

of the report and recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable John P. Bailey, United States District Judge. **Failure to timely file objections to this opinion/report and recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such opinion/report and recommendation**. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address on the docket sheet, and to counsel of record, as applicable.

DATED: September 17, 2012

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE